# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1735 | **DATE** | 1/6/2004 |
| **CASE TITLE** | Skylink Tech Inc. vs. Assurance Co. of America | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons stated in the attached memorandum opinion and order, plaintiff's motion for partial summary judgment on the duty to defend [14-1] is denied and defendant's cross motion for summary judgment [20-1] is granted. Having found that Assurance does not have a duty to defend Skylink in the Underlying Action, Skylink's Count II for Breach of Contract in its first amended complaint is hereby dismissed. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JAN 7 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 1/6/2004 date mailed notice | |
| KF | courtroom deputy's initials | | KF6 mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SKYLINK TECHNOLOGIES, INC., <br> Plaintiff, <br><br> v. <br><br> ASSURANCE COMPANY OF AMERICA, <br> Defendant. | No. 03 C 1735 |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Plaintiff Skylink Technologies, Inc. ("Skylink") filed this diversity action against Defendant Assurance Company of America ("Assurance") for breach of contract and for a declaration that Assurance has a duty to defend or indemnify it against claims brought by Chamberlain Group, Inc. ("Chamberlain") in Case No. 02 C 6376 in this District Court ("Underlying American Action") and Case No. 03 CV 242372CM1 in the Ontario Superior Court of Justice ("Underlying Canadian Action"). The parties filed cross motions for summary judgment as to Count I of Skylink's First Amended Complaint, Assurance's duty to defend. For the reasons set forth below, we find that Assurance does not have a duty to defend Skylink. Therefore, Skylink's motion is denied and Assurance's motion is granted.

## Factual Background[1]

Between March 9, 1999, and March 9, 2002, Assurance issued a series of insurance policies to Skylink under the common policy number PPS 34615337. Each policy included Commercial General Liability ("CGL") and Commercial Umbrella ("CU") coverage, which obligated Assurance to defend Skylink against any suit seeking damages for 'advertising injury.' On September 6, 2002, Chamberlain filed the

---

[1] These facts come from the parties' Joint 56.1 Statement of Material Facts and are not in dispute.

Underlying American Action and on January 17, 2003, it filed the Underlying Canadian Action. Both actions were filed well within the applicable coverage period and allege the same unlawful conduct and injuries. The Underlying American Action alleges copyright infringement, false description, unfair competition, patent infringement[2], and violations of various Illinois statues. The Underlying Canadian Action alleges patent infringement, unfair competition, and violations of various Canadian statutes.[3] Skylink tendered defense of both Underlying Actions to Assurance. Assurance denied coverage claiming that Chamberlain's factual allegations, which are the same in both Underlying Actions, do not constitute an 'advertising injury' as defined in its CGL and CU coverage.

*Allegations in the Underlying Actions*

Chamberlain manufactures and sells garage door openers ("GDOs"), transmitters, and garage door remote controls. Skylink is a competitor of Chamberlain and distributes universal remote control devices that operate many different brands of GDOs, including Chamberlain's. Chamberlain developed a computer software program entitled "Code Guard Rolling Code", for which it secured a copyright.[4] In the Underlying Actions, Chamberlain claims that it developed the Rolling Code technology as a security measure to prevent "code-grabbing" - capturing and recording transmitter signals to obtain illegal access to a homeowner's garage. Both parties agree that Skylink distributes a universal transmitter, the Model 39, which can be used to open a variety of standard GDOs, including Chamberlain's Security+, which contains Rolling

---

[2] Although the Underlying Actions alleges patent infringement, Skylink does not contend that Assurance has a duty to defend those claim and therefore we will not address them.

[3] The differences in the labels of the claims in the Underlying American and Canadian Actions are not material because the alleged conduct and injuries are the same. Therefore ,our subsequent legal analysis of the Underlying American Action is also applicable to the Underlying Canadian Action.

[4] Chamberlain also secured a copyright for a subsequent modification of that original work.

Code technology. The complaint in the Underlying American Action alleges that Skylink infringed upon Chamberlain's copyright when it "marketed," "offered to the public . . . and otherwise trafficked in" a devise designed and produced solely to circumvent Chamberlain's Rolling Code technology in violation of 17 U.S.C. § 1201(a). (J.A., Ex. 10, ¶ 21).

The remainder of Chamberlain's American and Canadian claims relevant to Assurances' duty to defend, cite to the advertisements printed on the packaging for Skylink's Model 39 universal transmitter and Model 89 keypad ("Skylink transmitters"). Those advertisements state that Skylink's transmitters are "Compatible with the latest Rolling Code Technology: Chamberlain®, Liftmaster®, Sears®, "Security+"™, and Genie® "Intellicode"™." Skylink's packaging further states that its GDOs are compatible with Chamberlain's 1983-2002 GDOs. (J.A., Ex. 10 at 11-12). Chamberlain contends that these descriptions are false or misleading because Skylink's transmitters are not compatible with either Chamberlain's Rolling Code technology or Chamberlain's GDOs equipped with Rolling Code technology.

According to Chamberlain, Skylink's GDOs are not compatible with Chamberlain's products because the Skylink transmitters do not use Rolling Code technology. Chamberlain asserts that Rolling Code technology changes the GDO code every time the transmitter is activated thereby preventing theft of the opener code, while Skylink's GDOs transmit the same opener code for each transmission. Chamberlain alleges that, when used with Chamberlain's Rolling Code technology, Skylink's products actually defeat and disable Chamberlain's security feature. Chamberlain also contends that Skylink's transmitters are sold in competition with Chamberlain's GDOs and that "[s]uch sales by Skylink . . . on packaging containing such false or misleading description of fact will damage the reputation of Chamberlain's garage door openers and will result in the loss of sales and profits." (J.A., Ex. 10, ¶ 28).

*Relevant Policy Provisions*

Under its CGL and CU coverage, Assurance agreed to defend Skylink against any 'suit' seeking damages for 'advertising injury', defining that term under both types of coverage as: "injury arising out of one or more of the following offenses:

- A) Oral or written publication of material that slanders or libels a person or organization or disparages a person's organization's goods, products or services;
- B) Oral or written publication of material that violates a person's right of privacy;
- C) Misappropriation of advertising ideas or style of doing business; or
- D) Infringement of copyright, title or slogan."

The CU coverage also includes the offense of using "another's advertising idea in your 'advertisement'" within the definition of 'advertising injury'. This language is identical in each of the 1999-2002 PPS 34615337 policies and therefore we need not decide which exact policy is applicable to the Underlying Actions.[5] Both parties concede that the alleged conduct occurred within the coverage period of one or more of these policies.

The policies further provide that Assurance has a duty to defend Skylink against any suit seeking 'advertising injury' to which this insurance applies, but does not have such a duty in cases where the insurance does not apply. (J.A., Ex. 5 at 0302). The policies cover qualified suits in both the United States and Canada. (J.A., Ex. 5 at 0311). Under the Exclusions section of the CGL and CU coverage, the policies explicitly preclude coverage for "'[a]dvertising injury' . . . [a]rising out of the failure of goods, products, or services to conform with any statement of quality or performance made in your 'advertisement'." *Id.*

If Assurance is found to have a duty to defend Skylink, the CU coverage provides that Assurance will "pay on behalf of insured those sums in excess of the

---

[5] Because each of the polices contains the same language, we only cite the most recent 2002 version of the PPS 34615337 policy.

4

'retained limit' which the insurer becomes legally obligated to pay as damages for: 'Advertising injury' committed . . . in the course of advertising your goods, products or services." (J.A., Ex. 5 at 0321).

**Legal Analysis**

*Choice of Law*

As a preliminary matter we address Assurance's assertion that California law should govern our analysis. In diversity cases such as this we do not worry about conflict of law issues unless the parties disagree on which state's law applies. *Massachusetts Bay Ins. Co. v. Vic Koening Leasing, Inc.*, 136 F.3d 1116, 1120 (7th Cir. 1998). In its brief, Assurance asserts a conflict between Illinois and California law and argues that California law should apply. However, in the same sentence, Assurance concedes that it "does not disagree that the outcome [of the case] would be the same under either California or Illinois law." (Def.'s Mem. at 6.) Skylink contends that Illinois law should apply because there is no conflict between California and Illinois law.

The choice of law rule will only be invoked when the parties present a conflict of laws issue material to the outcome of the case. *Int'l Admins., Inc. v. Life Ins. Co. of N. America*, 753 F.2d 1373, 1376 n.4 (7th Cir. 1985). "[W]hen neither party raises a conflict of laws issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits." *Massachusetts Bay Ins. Co.*, 136 F.3d at 1120. Both parties concede that there is not a conflict of law material to the outcome of the case, thus we will apply Illinois law, the law of the state in which we sit.

*Summary Judgment Standard of Review*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*,

5

477 U.S. 317, 323 (1986), *Flores v. Preferred Technical Group*, 182 F.3d 512, 514 (7th Cir.1999). The movant bears the burden of establishing that there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322-23. In their joint 56.1 statement, the parties state that there are no material facts in dispute and we agree.

Therefore, we now address whether either party is entitled to judgment as a matter of law. The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court and appropriate subjects for disposition by summary judgment. *Lexmark Int'l, Inc. v. Transportation Ins. Co.* 761 N.E.2d 1214, 1220 (Ill. App. 1st Dist. 2001). Summary judgment may be awarded to insurers in declaratory judgment actions when, as a matter of law, the insurance policy does not cover the underlying claim. *Zurich Ins. Co. v. Sunclipse, Inc.*, 85 F. Supp. 2d 842, 848 (N.D. Ill. 2000).

*An Insurer's Duty to Defend*

Under Illinois law, the insurance company's duty to defend under an insurance policy is determined by comparing the allegations in the underlying complaint to the relevant insurance policy provisions. *Hurst- Rosche Eng'rs. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995). "If the facts alleged in the underlying complaint fall within or even potentially within policy coverage, the insurer has a duty to defend its insured against the complaint." *United States Fire Ins. Co. v. Aetna Life & Cas.*, 684 N.E.2d 956, 960-61 (Ill. App. 3d 1997) (citations and internal quotations omitted).

The court must construe the underlying complaint liberally, resolving all doubts in the insured's favor. *United States Fire Ins. Co.*, 684 N.E.2d at 961. The key "is not the legal label that the [underlying] plaintiff attaches to the [insured's] conduct, but whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers." *Curtis-Universal, Inc. v. Sheboygan*

*Emergency Med. Servs., Inc.*, 43 F.3d 1119, 1122 (7th Cir. 1994). Moreover, if the underlying complaints allege several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy. *U.S. Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991).

*Application of the Law*

Skylink asserts that Assurance has a duty to defend the claims at issue in the Underlying Actions under the "advertising injury" provisions of its CGL and CU coverage. After reviewing the applicable provisions of the coverage, we find that in order for Skylink to establish a duty to defend on the part of Assurance, it must show that 1) it was engaged in advertising activity or used another's advertising idea in its advertisement; 2) the underlying complaint contains allegations that fit one of the enumerated offenses; and 3) the injury to the underlying plaintiff arose out of an offense that the insured committed while engaging in advertising or business activity. *Winklevoss Consultants, Inc. v. Federal Ins. Co.*, 991 F. Supp. 1024, 1030-31 (N.D. Ill. 1998) *(Winklevoss II)*.[6] *See also Knoll Pharmaceutical Co. v. Automobile Ins. Co.*, 152 F. Supp. 2d 1026, 1037. Skylink has failed to establish that any of the claims in the Underlying Actions allege an advertising injury as defined in the policies. None of the underlying claims satisfy these three requirements and therefore Assurance does not have a duty to defend Skylink in the Underlying Actions.

---

[6] The Court in *Winklevoss II* established a similar test in determining whether there was a duty to defend under an insurance policy with identical language as the policy in the case at bar. The insurance policy in *Winklevoss II* defined 'advertising injury' as injury arising out of "1) oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; 2) oral or written publication of material that violates a person's right of privacy; 3) misappropriation of advertising ideas or style of doing business; or 4) infringement of copyrighted advertising materials, titles or slogans." *Winklevoss*, 991 F. Supp at 1030-31.

7

## A. Copyright Infringement Claim

Skylink's first argument, that Chamberlain's copyright infringement claim is covered by Assurance's "advertising injury" provision, does not hold water. In fact, the copyright infringement portion of Chamberlain's complaint does not even mention an advertising activity as a basis for the claim. Instead, the complaint contends that Skylink "made, imported, offered to the public, provided and otherwise trafficked in" transmitters designed or produced for the purpose of circumventing a technological measure that controls access to the copyrighted software program. (App., Ex. 10, ¶ 21). In essence, Chamberlain alleges that Skylink trafficked in a product that infringed Chamberlain's copyright.

Skylink's attempt to construe this claim as an alleged "advertising injury" by focusing on the terms "marketed" and "offered to the public" must fail. The alleged infringement was not caused by an advertising activity, but rather, by the manufacture, use, and sale of an allegedly infringing product. The possibility that Skylink advertised the infringing product or sold the product through advertisements is irrelevant.[7] *Davila v. Arlasky*, 857 F. Supp. 1258, 1263 (N.D. Ill. 1994). As noted in *Winklevoss II*, "including such conduct within the scope of advertising injury would drastically expand coverage beyond the reasonable expectations of the insured." *Winklevoss*, 991 F. Supp. at 1032 (*citing Davila*, 857 F. Supp. at 1262-63). A tortious act of the seller does not fall within the definition of 'advertising injury' just because the product was advertised. *Id.* Therefore, for purposes of the copyright infringement claim, Skylink was

---

[7] Skylink cites *Cahill v. Liberty Mut. Ins. Co.*, 80 F. 3d 336, 339 n. 3 (9th Cir. 1996) for the proposition that, in copyright infringement actions, "the injury emanates within the advertisement itself and requires no further conduct" to satisfy the causal connection. However, the full context of the quotation states that "'[i]nfringement of copyright, title or slogan' typically occurs upon unauthorized reproduction or distribution of the protected material. In all these instances, the injury emanates within the advertisement itself . . ." Id. (emphasis added). This case does not involve the unauthorized reproduction or distribution of the protected material and is thus distinguishable from *Cahill*.

8

not involved in an advertising activity.

Moreover, the copyright infringement claim is based on a violation of 17 U.S.C. § 1201(a), which provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title." To support this claim, Chamberlain alleges that Skylink trafficked in products solely made and designed to circumvent a copyright protection system. Chamberlain did not allege any advertising activity.

In a second attempt to bring the copyright allegation potentially within the terms of the 'advertising injury' provision, Skylink points to the use of the term "Rolling Code" technology in its advertisements. This attempt also fails. The copyright infringement claim has nothing to do with Skylink's advertisements, as evidenced by Chamberlain's failure to make mention of any specific advertisements in the claim. Although the Court construes the complaint liberally in favor of Skylink, we cannot read into the complaint words that do not appear. *Winklevoss*, 991 F. Supp. at 1033.

Finally, even if the copyright infringement claim had alleged an advertising injury, the claim failed to allege that any advertising activity was the source of the purported harm. Chamberlain did not allege an injury that resulted from Skylink's advertising or business activity. As noted by the court in *Winklevoss II*, "the advertising activities must cause the injury—not merely expose it." 991 F. Supp. at 1033 (citing *Simply Fresh Fruit Inc. v. Continental Ins. Co.*, 94 F.3d 1219, 1223 (9th Cir. 1996). The purported harm came from the alleged creation and sale of an infringing devise, not advertising. Since this claim does not even potentially fall within the terms of the advertising injury provisions, Assurance has no duty to defend the underlying copyright infringement claim.

## B. Remaining Claims

The remaining underlying claims for false description, unfair competition, and those in the Canadian suit are all based upon the same statements made in advertisements printed on each package of Skylink's transmitters. Because the Court "give[s] little weight to the legal label that characterizes the underlying allegations" and "[i]nstead, . . . determine[s] whether the alleged conduct arguably falls within at least one of the categories of wrongdoing listed in the policy", these claims will be considered as one offense for the purposes of determining a duty to defend. *Lexmark Int'l, Inc.*, 761 N.E.2d at 1221. The various legal claims attached to the same alleged conduct will not impact whether that conduct constitutes an advertising injury.

Since the remaining claims are all based upon statements printed in Skylink's advertisements, these claims clearly allege that Skylink engaged in advertising activity. Therefore, our inquiry will turn to whether the underlying complaint contains allegations that fit within one of the enumerated offenses in the policy coverage and whether the alleged injury to Chamberlain arose out of an offense that the insured allegedly committed while engaging in advertising or business activity. In this case, the allegations in the complaint do not fit one of the enumerated offenses and the injury to Chamberlain did not arise out of the advertising or business conduct alleged.

Chamberlain contends that Skylink's advertisements, which state that Skylink's transmitters are compatible with Chamberlain's Rolling Code technology and GDOs equipped with Rolling Code technology, are false and misleading because Skylink's transmitters do not use Rolling Code technology. Instead, Chamberlain contends that Skylink's GDOs transmit the same opener code for each transmission. Skylink argues that this allegation potentially fits within the following two offenses included in the definition of 'advertising injury' in the policy coverage: 1) disparagement of an . . . organization's goods, products or services and 2) [m]isappropriation of advertising

10

ideas or style of doing business.

Disparagement has been defined as "[a] statement about a competitor's goods which is untrue or misleading and is made to influence or tends to influence the public not to buy." *Winklevoss II*, 991 F. Supp. at 1036; *Zurich*, 85 F. Supp. 2d at 856 ("The term 'disparagement' refers to statement[s] about a competitor's goods which [are] untrue or misleading and [are] made to influence or tend to influence the public not to buy."). Skylink's advertisements do not constitute disparagement of Chamberlain's goods or products because they do not make any statements about Chamberlain's GDOs. Instead, Skylink's advertisements make false or misleading statements about its own transmitters.

Skylink cites to *Winklevoss III* to support the proposition that the insurer has a duty to defend against a trademark infringement claim. See *Winklevoss Consultants, Inc. v. Federal Ins. Co.*, 11 F.Supp.2d 995 (N.D. Ill. 1998) (Winklevoss III). However, as illustrated by the allegations themselves, the underlying complaint does not allege trademark infringement. Chamberlain does not contend that Skylink confused consumers regarding the origin of the Skylink transmitters. Instead, the allegations state that Skylink's statements regarding the compatibility of its own product with other forms of technology were false and misleading.

In addition, in *Winklevoss III*, a decision which involved false comparison, the court found that "[a]t least one paragraph claims that Winklevoss mentioned [the underlying plaintiff] by name, and, given this context, we can easily infer from the other paragraphs further alleged misleading, negative comparisons to Lynchval's products." *Id.* at 999. In contrast, Chamberlain's underlying complaint alleges a false or misleading statement of compatibility, not a false comparison. Skylink's statements indicating that its transmitters are compatible with Chamberlain's GDOs do not make a comparison between the two products. Nor do those statements make any negative

11

references to the nature of Chamberlain's goods or products. Simply listing Chamberlain's GDO as one product among many with which Skylink's transmitters can be used, does not constitute a misleading or negative comparison between Skylink's products and Chamberlain's products. Therefore, the allegations contained in the underlying complaint do not fit within disparagement of an organization's goods or services.[8]

Skylink also asserts that the relevant allegations in the underlying complaints fall within the enumerated offense of misappropriation of advertising ideas or style of doing business. To support that proposition, Skylink cites to cases that again deal with trademark, trade name, or servicemark infringement. As discussed above, the underlying claim does not allege a trademark, trade name, or servicemark infringement. Under the broadest possible definition, misappropriation could be construed to mean "the insured wrongfully took an idea about the solicitation of business." *Winklevoss II*, 991 F. Supp. at 1038. Skylink's claim does not even potentially fall within that definition. Chamberlain does not take issue with Skylink's use of either Chamberlain's name or the phrase "Rolling Code technology" in Skylink's advertisements. Instead, Chamberlain's sole contention is that Skylink made a false and misleading statement about its own product that will ultimately cause harm to the reputation of Chamberlain's GDOs. The advertisement does not create the harm. Beyond the advertisement itself, Skylink's products must be used with Chamberlain's GDOs for the potential harm to arise. Therefore, because Skylink cannot argue that Chamberlain alleges Skylink misappropriated compatibility as an advertising idea, this allegation does not come within misappropriation for purposes of establishing an advertising injury.

---

[8] Although not argued by the parties, Skylink's disparagement argument is also precluded by another portion of the policy coverage, excluding coverage for "advertising injury . . . [a]rising out of the failure of goods, products, or services to conform with any statement of quality or performance made in your 'advertisement'." (App., Ex. 5 at 0302).

Finally, the injury to Chamberlain did not arise out of Skylink's advertising activity. Chamberlain alleges that Skylink's false and misleading statements regarding compatibility will ultimately harm the reputation of Chamberlain's GDOs. Chamberlain alleges that, when used with Chamberlain's Rolling Code technology, Skylink's products defeat and disable Chamberlain's security feature against theft of the opener code upon which their consumers rely. The potential for theft created by the loss of Chamberlain's security feature would thereby harm the reputation of Chamberlain's GDOs, resulting in the loss of sales and profits.

A close reading of the underlying complaint reveals that Chamberlain identifies the source of its proposed injury as "[s]uch *sales* by Skylink . . . on packaging containing such false or misleading description of fact [which] will damage the reputation of Chamberlain's garage door openers and will result in the loss of sales and profits." (App., Ex. 10 at ¶ 28) (emphasis added). Therefore, again, the injury arose not from the advertisement, but from the sale of a product that, when used as the packaging directs, will cause injury because Skylink's transmitters disable Chamberlain's security features.

Furthermore, in *Winklevoss II*, the court found no duty to defend where the harm arose with the development of a product based upon trade secret misappropriation long before the insured began marketing the product. *Winklevoss*, 991 F. Supp. at 1036. In this case, the lack of compatibility stems from Skylink's copyright infringement because these transmitters were allegedly designed to circumvent Chamberlain's copyright protection measures. Therefore, Chamberlain asserts that Skylink's transmitters are not compatible with its Rolling Code technology since Skylink's transmitters were designed to circumvent that very technology. In this case, the harm began when Skylink developed a product that could be used with Chamberlain's GDOs (in the sense that the transmitters would cause the doors to open)

but infringed upon Chamberlains's copyright by circumventing a protective measure meant to limit access to the rolling code technology. Consequently, as in *Winklevoss II*, the injury arose long before Skylink began advertising its transmitters.

## Conclusion

Because Skylink failed to meet any of the prongs of the advertising injury test, the Court finds that Assurance had no duty to defend Skylink in the Underlying Actions. For the foregoing reasons, we grant Assurance's motion for summary judgment and deny Skylink's motion for summary judgment. It is so ordered.

ENTER:

**MICHAEL T. MASON
United States Magistrate Judge**

**Dated: January 6, 2004**